Steven N. Williams (State Bar No. 175489)
**JOSEPH SAVERI LAW FIRM, LLP**
601 California Street, Suite 1000
San Francisco, CA 94108
Telephone: (415) 500-6800
Facsimile: (415) 395-9940
Email: swilliams@saverilawfirm.com

*Counsel for Plaintiff Maria C. Luna*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA C. LUNA,<br><br>                              Plaintiff,<br><br>     v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; CALIFORNIA MEDICAL FACILITY,<br><br>                              Defendants. | Case No. 3:20-CV-08097-EMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            TBD<br>Time:           TBD<br>Courtroom:   5<br>Judge:          Hon. Edward M. Chen |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................... 1
II. COUNTERSTATEMENT OF FACTS ..................................................................... 1
    A. The IEX incident ............................................................................................ 1
    B. Plaintiff's Request and Defendant's response to the IEX incident ................ 2
    C. Plaintiff's encounters with the inmate prior to the IEX incident ................... 2
    D. Plaintiff's encounters with the Inmate after the IEX incident ...................... 2
    E. List of disputed facts ..................................................................................... 3
III. LEGAL STANDARD ............................................................................................... 3
IV. ARGUMENT ............................................................................................................ 4
    A. Defendants have failed to shift the burden to Plaintiff. ................................ 4
    B. Plaintiff experienced a hostile environment and the Defendants failed to take reasonable action under the said circumstances ................................... 4
        1. Hostile environment ........................................................................... 4
        2. Lack of reasonable action .................................................................. 6
    C. Plaintiff's Claims are Not Barred by the Statute of Limitations ................... 8
V. CONCLUSION ......................................................................................................... 8

## I.  INTRODUCTION

Defendants'[1] Motion for Summary Judgment ("MSJ"), ECF No. 30, should be denied because Defendants have failed to carry their burden of showing there are no genuine issues of material fact. The actions Defendants took and failed to take in response to plaintiff Maria C. Luna's ("Plaintiff") workplace complaints were not reasonable. As a result, Defendants caused Plaintiff to suffer in a hostile work environment. Therefore, Defendants are not entitled to summary judgment.

## II.  COUNTERSTATEMENT OF FACTS

Plaintiff is an Asian-American woman who has worked as an instructor at Defendant's Correctional Medical Facility in Vacaville for two decades without incident other than the facts underlying this case. She taught classes to inmates and was considered a valuable employee. While teaching her class one day an inmate engaged in sexually threatening conduct towards her, exposing himself and masturbating while staring at Plaintiff in a threatening manner. This inmate had a history of similar conduct at the same facility. Plaintiff was subsequently menaced again and again by this inmate. Plaintiff suffered both physical and emotional injuries as a result of these repeated encounters and asked that Defendants make some accommodations that would minimize or eliminate her exposure to this inmate. Defendants did nothing. Plaintiff then brought this suit.

### A.  The IEX incident

Plaintiff is a Filipino-American registered nurse. She has been employed by Defendants since June 4, 2004. On February 9, 2018, while acting within the course of and scope of her employment, Plaintiff was conducting a morning Nurse Group when an inmate ("inmate" or "offending inmate") engaged in threatening behavior towards Plaintiff by exposing himself and masturbating while staring intently at Plaintiff in an intimidating manner. (Hereinafter the indecent exposure incident ("IEX Incident")). Declaration of Maria C. Luna ("Luna Decl.") at ¶¶ 2,3. Plaintiff suffered both emotional trauma and physical injuries to her left ankle upon stumbling while attempting to run away from the offending inmate. Luna Decl. at ¶3. In light of the IEX incident and the inmate's prior history,

---

[1] Defendants are California Department of Corrections and Rehabilitation ("CDCR") and California Medical Facility ("CMF").

Defendants were fully aware of risks posed by the offending inmate to female employees and non-employees. February 22, 2022 Rule 30(b)(6) Deposition, **Exhibit 2** to Declaration of Steven N. Williams in Opposition to Motion for Summary Judgment ("Williams Decl"), Freeman at 63:14-19.

### B.    Plaintiff's Request and Defendant's response to the IEX incident

Since being imprisoned, the offending inmate has an extensive history of sexual misconduct and battery convictions, threatening staff, as documented in CDCR/CMF′s "Rules Violations Report" and "Security Threat Group." MSJ, Exh. D at p. 111-114. Following the incident, Plaintiff filed a report of the incident to the two O-2 wing correctional officers on duty, her immediate supervisor, and the sergeant on duty in the wing. Luna Decl. at ¶4. Although Defendants claim that they took prompt action against the offending inmate in this case, there is no evidence that they took any action whatsoever in response to Plaintiff's request for accommodation – the only relevant issue on this motion. Failing to make any accommodation at all is not reasonable given the continuing abuse suffered by Plaintiff each time she encountered the offending inmate. Furthermore, there is no evidence that the offending inmate was even banned from Plaintiff's classrooms. Williams Decl., **Exhibit 1**, January 19, 2022 Rule 30(b)(6) Deposition, Moeckly at 70:1-6.

### C.    Plaintiff's encounters with the inmate prior to the IEX incident

Prior to the IEX incident, during one of her classes attended by the inmate and while alone in the classroom with him, Plaintiff, who is an Asian-American woman, was informed by the inmate that he was in prison for murdering another Asian woman, saying he got a big rock, and he hit her on the head and left her dying on the ground. Plaintiff did not seek this information and it was offered by the offending inmate upon his own volition. Luna Decl. at ¶5.

### D.    Plaintiff's encounters with the Inmate after the IEX incident

Following the IEX incident in February, on October 12, 2018, Plaintiff noticed the offending inmate staring at her. There was no one else around. At the time she was working in her classroom, and the inmate stared at her through the classroom window. She is unaware of how long the offending inmate continued to stare at her as she had her back turned away from the window while she taught the disabled inmate. Luna Decl. at ¶6. Plaintiff was so frightened during this episode that she could not look

at the inmate, even while he stood staring at her. Luna Decl. at ¶7.

On October 22, 2018, Plaintiff encountered the offending inmate in the O wing hallway. As she encountered him, he moved and walked towards the center of the hallway where she was. Luna Decl. at ¶8.

On October 26, 2018, Plaintiff submitted a CDC 128-B form to the Custody and Nursing Supervisor stating her safety concerns and that she continued to feel threatened by the offending inmate. Defendants failed to notify Plaintiff of the outcome of the reported stalking incident or that any measures were taken to address her safety concerns. Furthermore, upon discovery it appears that this form was perhaps never looked at by anyone, but just placed into the offending inmate's file. Defendants could not identify any current staff member who may have reviewed Plaintiff's October 26 128-B. Williams Decl., Exh. 1, Moeckly at 32:1-9.

On November 29, 2018, the offending inmate entered Plaintiff's classroom unannounced and without cause. The shock of this encounter caused Plaintiff severe trauma, chest pain, and hand tremors. Luna Decl. at ¶9. The offending inmate then confronted Plaintiff while standing approximately five feet away from her. After the incident, Plaintiff's well-being was adversely affected and she was distraught. The Nursing Supervisor sent Plaintiff home due to her emotional distress. Williams Decl., Exh. 1, Miles at 42:10-12. Plaintiff documented this incident on a "Therapeutic Intervention/Group Progress Note." MSJ, Exh. E.

### E. List of disputed facts

i. Whether Defendants took reasonable action under the circumstances.

ii. Whether Plaintiff's complaint is time barred.

## III. LEGAL STANDARD

A party moving for summary judgment must initially identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Once the moving party meets its initial burden, however, the burden shifts to the non-moving party to set forth, by affidavit or as otherwise provided in Rule 56, specific

facts showing that there is a genuine issue for trial." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009). The court regards as true the nonmoving party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). The moving party must satisfy its initial production in its opening brief, as a new argument cannot be raised for the first time in a reply brief. *See Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1176, 1176 n.4 (9th Cir.1995) (issues not raised in opening brief may not properly be raised in reply); *In re Lal*, No. C 01-1507 VRW, 2002 WL 449661, at 3 (N.D. Cal. Mar 15, 2002); *United States v. Boyce*, 148 F. Supp. 2d 1069, 1085 (S.D. Cal. 2001).

On summary judgment, the Court cannot weigh the evidence or determine the credibility of the deponents. *See George v. Edholm*, 752 F.3d 1206, 1214 (9th Cir. 2014) (noting that "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts" are inappropriate on summary judgment) (internal quotation marks and citation omitted); *Fed. Trade Comm'n v. Lending Club Corp.*, No. 18-CV-02454-JSC, 2020 WL 2838827, at 9 (N.D. Cal. June 1, 2020).

## IV. ARGUMENT

### A. Defendants have failed to shift the burden to Plaintiff.

Defendants have failed to meet their initial burden as moving party to show that there is no genuine issue of material fact, *Stefanchik*, 559 F.3d at 927-28, because they have failed to show they did anything in response to Plaintiff's requests. Instead, they simply argue that it was reasonable for them not to do anything. As a result, Defendants have failed to show that there is no genuine dispute as to any material fact on any of Plaintiff's claims against Defendants, for which reason, Defendants' MSJ should be denied.

### B. Plaintiff experienced a hostile environment and the Defendants failed to take reasonable action under the said circumstances

#### 1. Hostile environment

To establish the existence of a hostile work environment, under Title VII, an employee must prove that (1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was

unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. In evaluating the objective hostility of a work environment, the factors to be considered include the "frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McGinest v. GTE Serv. Corp.,* 360 F.3d 1103, 1113-15 (9th Cir. 2004) (citations omitted). The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct. *Id.* (internal quotation marks omitted) (citations omitted).

      Defendants baldly claim that as a reasonable woman and a trained registered nurse, Plaintiff chose to work in an environment as such the one in question and cannot reasonably call the setting abusive or hostile based on one reported incident. However, this is not the case. As provided hereinabove, there have been at least three more incidents where the offending inmate has caused Plaintiff immense fear for her safety and well-being, which have further manifested in the form of physical symptoms such as hand tremors, palpitations, and severe trauma. Luna Decl. at ¶10.

      Defendants fail to take cognizance of the fact that the latest reported incident on November 29, 2018, cannot be seen in isolation. Rather, it must be considered within the larger context of the IEX incident in February 2018. This is also because Defendants were aware that Plaintiff continued to remain fearful of the offending inmate and that she had requested accommodations. Williams Decl., **Exhibit 4**; Exh. 2, LeasureBrown at 12:9-16.

      Firstly, the IEX incident on February 9, 2018, is unequivocally one of a threatening, hostile sexual nature. The said incident fits squarely within the definition of inmate sexual conduct and requires a stipulated protocol to be followed upon the incident being reported. Williams Decl., **Exhibit 5**. The IEX incident entailed physical conduct of a sexual nature and was unwelcome by Plaintiff.

      The constant encounters adversely affected Plaintiff physically and mentally. At no point during her employment was Plaintiff offered alternate accommodations or given duties that kept her physically away from the offending inmate's vicinity. Following her third encounter with the offending inmate, Plaintiff began to experience physical symptoms of this abuse and trauma. Furthermore, she took

conscious steps to place herself away from the offending inmate each time he encountered her. Luna Decl. at ¶11. Such intentional efforts were Plaintiff's means to steer clear of the offending inmate and find ways to mitigate the abuse she was undergoing. Luna Decl. at ¶12.

Defendants' argument that Plaintiff was not subject to an abusive work environment suffers a vital lacuna. But for the IEX incident, the offending inmate's subsequent stalking outside Plaintiff's classroom, and his contrived and intimidating entry into her classroom, Plaintiff would not have suffered the physical and emotional harm that she experienced. Williams Decl., **Exhibit 6** ("Physician's Notes"). In reality, she was suffering in an abusive environment, without any concrete and reasonable action by Defendants to accommodate, or even to address, her concerns.

Defendants' lack of action towards the offending inmate's conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment. For the reasons stated above, Plaintiff suffered a hostile work environment.

### 2. Lack of reasonable action

Even in an inherently dangerous working environment, the focus remains on whether the employer took reasonable measures to make the workplace as safe as possible. The CDCR is not, by simple virtue of its status as a correctional institution, immune under Title VII from a legal obligation to take such measures and to protect its employees to the extent possible from inmate sexual abuse. *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). In the Ninth Circuit, employers are liable for harassing conduct by non-employees "where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Folkerson v. Circus Circus Enters., Inc.,* 107 F.3d 754, 756 (9th Cir.1997); *see also Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 968 (9th Cir.2002); cited in *Freitag v. Ayers*, 468 F.3d at 538.

When an inmate commits the act of indecent exposure, he is supposed to be removed from the general population and placed in administrative segregation pending an outcome of the institutional classification committee. Following this, a CDCR-115 rules violation report is issued, and the incident is referred to the local district attorney's office for felony prosecution. Williams Decl., Exh. 1, Moeckly at 26:1-5.

As provided hereinabove, the CDCR is not immune under Title VII from any legal obligation to ensure the protection of its employees. Despite these pressing obligations, Defendants deferred any action for reasonable accommodations, and did not even, at the bare minimum, volunteer a determination of any other employment opportunities for Plaintiff. Williams Decl., Exh. 2, Barnes at 9:9-15. This is despite the fact that Plaintiff was open to accepting any other job in order to preclude any further encounters with the offending inmate. Luna Decl. at ¶13.

On September 2, 2020, Defendants received information that there was a doctor's note placing Plaintiff on modified activity starting August through September 2020. Upon the receipt of information that any restrictions sought are permanent, Defendants, and particularly the Disability Management Unit, is responsible for ensuring there is discussion with Plaintiff concerning the permanent restrictions, her interests in pursuing employment, and whether she wishes to maintain employment within the agency. Despite a determination that the restrictions were permanent in November last year, such a discussion has not happened till date. Williams Decl., Exh. 2, Barnes at 23:9-23. Furthermore, no accommodations have been offered to Plaintiff and neither Defendants nor its agents have provided any reason for the same. Williams Decl., Exh. 2, Barnes at 24:3-9; Freeman at 27:11-14.

In this case, Defendants' actions fail to qualify as "reasonable", let alone meet the obligations laid down that the CDCR is not exempt from taking measures "to the extent possible" to protect its employees from sexual harassment. *Freitag*, 468 F.3d at 539.

Defendants state that it is physically impossible for the offending inmate to receive his treatment and also avoid crossing paths with Plaintiff. But per recent testimony, it is determined possible to use walkie-talkies and at the very least, intimate Plaintiff if the offending inmate is in the hallway. Williams Decl., Exh. 2, Freeman at 34:14-22. Another possible option would have been banning the offending inmate from Plaintiff's classrooms, but this was also apparently not considered by Defendant. Williams Decl., Exh. 1, Moeckly at 66:14-24. There is no dearth of options for reasonable action that could have been undertaken by Defendants. Representatives of Defendants have further confirmed that the offending inmate could have also been transferred to a different facility. Although such action would be

contingent on factors such as the inmate's enemy situation, classification score, among others. Williams Decl., Exh. 1, Moeckly at 109:9-24; 110:1-13.

Defendant's own representatives remain unaware of any restrictions placed on the offending inmate and have confirmed that it is unreasonable that the offending inmate was not placed under a ban from entering Plaintiff's classroom following the IEX incident. Williams Decl., Exh. 1, Moeckly at 70:1-6.

Furthermore, there are no documents whatsoever showing any offers to Plaintiff to work in different local facilities and her denial of such offers. Yet Defendants baldly argue that their actions in this case are reasonable. Williams Decl., Exh. 2, Freeman at 43:1-6; 47:6-16; LeasureBrown at 16:16-21. Although Defendants maintain that they carried out reasonable action to ensure Plaintiff is protected from sexual harassment, the facts and circumstances described hereinabove prove otherwise.

Defendants' inaction, disinterest, and flagrant disregard for the safety of Plaintiff exhibits an unequivocal ratification or acquiescence in the harassment she faced. *Freitag*, 468 F.3d at 538. For the reasons stated above, Defendants failed to take reasonable action to protect Plaintiff from a hostile work environment.

### C. Plaintiff's Claims are Not Barred by the Statute of Limitations

Defendants' argument that Plaintiff's complaint is time-barred is incorrect. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), the 90-day deadline to file a complaint at minimum would have fallen on November 11, 2020. As this date fell on Veteran's Day, a federal holiday, the last date to file was, at minimum, extended to November 12th. Fed. R. Civ. P. 6(a)(2)(6).

### V. CONCLUSION

For the reasons stated above, Defendants' MSJ should be denied in its entirety.

| | |
|---|---|
| Dated:  March 8, 2022 | Respectfully Submitted, |
| | By: */s/ Steven N. Williams* <br> Steven N. Williams |
| | Steven N. Williams (State Bar No. 175489) <br> **JOSEPH SAVERI LAW FIRM, LLP** <br> 601 California Street, Suite 1000 <br> San Francisco, CA 94108 <br> Telephone: (415) 500-6800 <br> Facsimile: (415) 395-9940 <br> Email: swilliams@saverilawfirm.com |
| | *Counsel for Plaintiff Maria C. Luna* |